UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   YESENIA CEPEDA,                                :
                                 Plaintiff,   :
                                                  :          19 Civ. 5967 (LGS)
                      -against-               :
                                                  :         OPINION AND ORDER
   UNITED STATES, et al.,                 :
                                 Defendants. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Yesenia Cepeda alleges that Defendant United States violated the Federal Tort Claims Act ("FTCA") and that Defendant Michael Ingargiola committed medical malpractice, in violation of New York common law. Defendants move under Rule 12(b)(1) to dismiss Ingargiola from the lawsuit on the ground that he was a federal employee acting within the scope of his employment and to substitute the United States as the sole defendant. Plaintiff contends that she is entitled to limited jurisdictional discovery on whether Ingargiola was a federal employee acting within the scope of his employment. For the following reasons, the motion to dismiss is granted. The motion for discovery is denied.

**I.    BACKGROUND**

       The following facts are taken from the Second Amended Complaint ("SAC"), are accepted as true for purposes of this motion, *see Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019), and are also taken from evidence filed as part of the submissions. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

       In 2017, Plaintiff underwent bilateral breast reduction surgery at the Bronx VA Hospital (the "VA"). Plaintiff's surgery was performed by Drs. Jay Meisner and Ingargiola.

Ingargiola is a licensed physician in New York, and he holds himself out as a physician offering professional services for cosmetic surgery. At all times relevant to the SAC, he was a resident at the Icahn School of Medicine at Mount Sinai (the "Icahn School"). Under a contract between the VA and the Icahn School, Ingargiola performed medical services at the VA under the supervision of VA physicians. The SAC alleges that Ingargiola was not an employee of the VA, but a contractor, based on Ingargiola's LinkedIn webpage and a description of the Icahn School's residency program.

Before surgery, Ingargiola informed Plaintiff that she was a good candidate for breast reduction surgery based on certain factors, including her relatively low body mass index and breast size. After her surgery, Plaintiff experienced pain in her breasts and other complications for several weeks. Meisner told Plaintiff that these symptoms were not uncommon and did not provide her with any additional treatment. During a follow-up visit, Ingargiola "roughly pulled out [one of] the drains [from Plaintiff's breast], even though it had been stitched to [the] skin under her arm, causing [her] to bleed profusely." Meisner chastised Ingargiola for his aggressive handling of Plaintiff's wounds. A nurse later informed Plaintiff that part of the reason she was experiencing pain was because the stitches holding one of the drains were never properly removed.

Following the surgery, Plaintiff's breasts were asymmetrical and were not reduced to the size she requested. Plaintiff alleges that the disparity between her breasts may have been due to "the possibility that her breasts had not been operated on by the same person, but that instead [Meisner and Ingargiola had] each operated on one of her breasts." In addition, the surgery resulted in "disfiguring scars across her entire right breast," which, to this day, remain "jagged, discolored, uneven and . . . extremely painful." Although Plaintiff visited Meisner and

Ingargiola at weekly check-ups, they provided no treatment and merely observed her wounds and took pictures.  When Plaintiff asked Meisner and Ingargiola about treatment for her scars, they told her to purchase over-the-counter scar treatment tape.  The complications following surgery have severely limited Plaintiff's employment and other activities.

On June 25, 2019, Plaintiff filed a pro se complaint under the FTCA against the United States.  After obtaining representation, Plaintiff filed the First Amended Complaint, adding claims for medical malpractice against Meisner and Ingargiola in their individual capacities.  On November 18, 2019, the United States Attorney for the Southern District of New York, pursuant to 28 U.S.C. § 2679(d), certified that Meisner and Ingargiola are federal employees for the purposes of this suit and were acting within the scope of their employment when they provided medical care to Plaintiff.  Plaintiff then removed Meisner as a defendant and filed the SAC, restating her allegations against the United States and Ingargiola.

## II.     STANDARD

An action against the United States under the FTCA is the exclusive remedy for injury "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting with the scope of his office or employment."  28 U.S.C. § 2679(b)(1); *Cannenier v. Skipper-Scott*, No. 18 Civ. 2383, 2019 WL 764795, at *3 (S.D.N.Y. Feb. 20, 2019).  "The only proper defendant to a tort claim under the FTCA is the United States."  *Cannenier*, 2019 WL 764795, at *3 (quotation marks omitted) (citing *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991)).

The FTCA states "that upon certification by the Attorney General that an employee was acting within the scope of his office or employment when he committed the allegedly negligent act, the United States shall be substituted as the defendant in place of the employee."  *Fountain*

*v. Karim*, 838 F.3d 129, 133 n.3 (2d Cir. 2016) (citing 28 U.S.C. § 2679(d)(1)). The "Attorney General's certification is 'the first, but not the final word' on . . . whether the United States is properly substituted as defendant." *Smith v. Brown*, 296 F. Supp. 3d 648, 655 (S.D.N.Y. 2017) (quoting *Osborn v. Haley*, 549 U.S. 225, 246 (2007)). A plaintiff may challenge the Attorney General's certification by alleging "with particularity facts relevant to the scope-of-employment issue." *McHugh v. Univ. of Vt.*, 966 F.2d 67, 74 (2d Cir. 1992), *abrogated in part on other grounds by Osborn*, 549 U.S. at 247; *accord Smith*, 296 F. Supp. 3d at 655. "If the plaintiff satisfies this initial burden, the Court will then conduct a de novo review of the certification" to determine whether the employee was acting within the scope of his or her employment. *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 768 (S.D.N.Y. 2015). The plaintiff bears the burden of persuasion to rebut the certification by a preponderance of the evidence. *See Bowles v United States*, 685 F. App'x 21, 24 (2d Cir. 2017) (summary order) ("'[T]he United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment.'" (quoting *Osborn*, 549 U.S. at 231) (emphasis in original))); *accord Green v. Hinds*, 17 Civ. 5422, 2019 WL 624929, at *4 (E.D.N.Y. Feb. 14, 2019) ("A plaintiff challenging the scope of employment determination must come forward with particular facts establishing the defendant employees were not in fact acting within the scope of their employment."); *Res Sols. Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006).

In reviewing the certification, a "court applies state law principles pertaining to" the scope of employment. *Bello v. United States*, 93 F. App'x 288, 289 (2d Cir. 2004) (summary order); *accord Smith*, 296 F. Supp. 3d at 655. "Under New York law, an employee acts within the scope of his employment when (1) the employer is, or could be, exercising some control,

4

directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Fountain*, 838 F.3d at 135 (internal quotation marks omitted); *accord Carlson v. Am. Int'l Grp., Inc.*, 89 N.E.3d 490, 500 n.6 (N.Y. 2017). Because the test is conjunctive, a plaintiff must rebut both prongs to show that an employee was acting outside the scope of his employment.

### III.  DISCUSSION

The motion to dismiss Ingargiola as a defendant is granted because Plaintiff does not allege facts with particularity showing that Ingargiola was acting beyond the scope of his employment. To the contrary, the SAC alleges facts that satisfy both tests under New York law showing that Ingargiola's challenged conduct was within the scope of his employment. *See Fountain*, 838 F.3d at 135.

First, the SAC pleads facts showing that the VA, as the employer, could and did exercise control over Ingargiola's activities at issue here. The SAC indicates that Ingargiola was working under the supervision of Meisner, who was a VA employee. Specifically, the SAC cites two websites showing that Ingargiola was working as a medical resident, in other words, as a physician in training. Meisner is described as an attending physician -- i.e., a physician employed by the VA -- with whom Ingargiola was working. The relationship between resident and attending physicians is one of control and supervision. *Mann v. United States*, 904 F.2d 1, 2 (2d Cir. 2000) ("[Ve]terans' hospitals [can] employ interns and residents . . . to provide medical care when supervised by a licensed physician."); *see also Lettman v. United States*, No. 12 Civ. 6696, 2013 WL 4618301, at *3 (S.D.N.Y. Aug. 29, 2013). Illustrating this relationship, the SAC alleges that Meisner chastised Ingargiola when he allegedly failed to provide proper medical care to Plaintiff. At no point does the SAC allege that Ingargiola was acting outside the control,

directly or indirectly, of Meisner or others at the VA.  To the contrary, Ingargiola and Meisner appear to have treated Plaintiff in tandem during patient visits and during the surgery.  On similar facts, courts have concluded that residents operate under the control of VA hospitals for FTCA purposes.  *See Ezekiel v. Michel*, 66 F.3d 894, 903 (7th Cir. 1995) (finding that a resident operating at a VA hospital under a "high[] degree of supervision and control" by the medical staff was a federal employee for FTCA purposes); *Costa v. U.S. Dep't of Veterans Aff.*, 845 F. Supp. 64, 66 (D.R.I. 1994) (finding that two residents working at a VA hospital "under the complete control of the Hospital through its employees" were federal employees for FTCA purposes).

The SAC is also consistent with the second prong of New York's scope of employment test, that Ingargiola's conduct was in furtherance of the duties he owed the VA.  Specifically, he rendered patient care acting as a physician and surgeon.  Because Plaintiff failed to plead facts showing that Ingargiola acted outside the scope of his employment, Plaintiff has not rebutted the certification, and the motion to dismiss Ingargiola is granted.

Plaintiff suggests that, because Ingargiola was contracted to work at the VA, he may not have been a federal employee.  But the distinction between sub-contractors and employees is legally irrelevant here.  The FTCA defines an "employee of the government" as "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."  28 U.S.C. § 2671.  Ingargiola, as described in the SAC, satisfies this definition.  Plaintiff cites *Williams v. United States*, No. 3 Civ. 9909, 2007 WL 951382 (S.D.N.Y. Mar. 22, 2007), for the proposition that a contractual agreement cannot alone establish federal employment for FTCA purposes, and that "the degree of the government's authority to

6

control the person's physical conduct" is what matters. *Id*. at *8. As discussed above, the degree of the government's authority to control is indeed a critical question under New York law defining scope of employment, but the SAC pleads no facts to show that Ingargiola acted independently.

Moreover, the contract between the Icahn School and the VA places residents under the control of the VA for employment purposes. The contract states that the VA will provide "supervision of trainees," "[o]rient trainees and . . . inform them that they are subject to VA rules and regulations while in a VA facility" and that "[u]ltimate responsibility for the control and operation of VA . . . programs rests with VA." Ingargiola's sworn declaration is consistent with the contract and states that he "performed medical services at all times under the supervision of [VA] physicians." Accordingly, neither the contract between the Icahn School and the VA nor Ingargiola's conduct at the VA establish that Ingargiola was acting outside the scope of his employment while working at the VA. *See Fountain*, 838 F.3d at 135.

Plaintiff notes that a resident who is supervised by a doctor during a medical procedure and who does not exercise any independent medical judgment can nevertheless be liable if the resident "knows that the supervising doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders." *Lettman*, 2013 WL 4618301, at *3. This proposition explains only how a plaintiff can establish liability; it does not provide a basis for determining when a defendant-employee is shielded from suit under the FTCA, which requires showing that the employee acted outside the scope of employment under New York law. *See Osborn*, 549 U.S. at 248 (stating that because "the purpose of the Westfall Act is to shield covered employees not only from liability but from suit, it is altogether appropriate to afford protection to a negligent employee as a matter of course" and that "it would

make scant sense to read the Act as leaving an employee charged with an intentional tort to fend for himself when he denies wrongdoing and asserts that he engaged only in proper behavior occurring wholly within the scope of his office or employment") (internal citations and quotations omitted).  The proposition of law that Plaintiff cites here is therefore irrelevant.

Plaintiff also argues that the SAC alleges that Ingargiola acted under the supervision and control of Mount Sinai Health System, Inc., implying that perhaps he was not acting under the direction and control of the VA.  In fact, the SAC alleges that Ingargiola "was under the supervision and control of the Bronx VA Hospital and/or Mount Sinai Health system."  The SAC cites two webpages in support of this proposition: Ingargiola's LinkedIn page, which states that he was a Resident Physician in Plastic and Reconstructive Surgery at "the Mount Sinai Hospital," and a second website that lists and describes the rotation sites for Plastic and Reconstructive Surgery Residents at the Mount Sinai Hospital, including the VA.  This webpage also states that the service at the VA is directed by Jay Meisner, MD.  These allegations and citations do not plead facts showing that Ingargiola acted under the control of the Mount Sinai Health System, Inc.

Finally, Plaintiff argues that she should be permitted to conduct jurisdictional discovery because she has sufficiently pleaded that Ingargiola is personally liable for medical malpractice.  The party requesting discovery bears the burden of showing the necessity of that discovery.  *See Molchatsky v. United States,* 778 F.Supp.2d 421, 438 (S.D.N.Y.2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013).  Plaintiff's motion to conduct jurisdictional discovery is denied because the SAC does not plead, nor is there anything in the record to suggest, that Ingargiola was acting outside the scope of his employment when he treated Plaintiff.  It is undisputed that when he treated Plaintiff, Ingargiola was acting as a resident physician working closely with Meisner, the

...

attending physician who directed the plastic and reconstructive surgery residency program at the VA.  According to the SAC, the two physicians met together with Plaintiff both before and after the surgery, and they conducted the surgery together, allegedly each doctor operating on one breast.  Given these facts, it is hard to imagine, and Plaintiff does not even speculate, what additional facts would show that Ingargiola was acting outside the scope of his employment.

"[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion. . . .  This is particularly true where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery."  *Freeman v. United States*, 556 F. 3d 326, 342 (5th Cir. 2009) (citation omitted); *accord Molchatsky*, 778 F. Supp. 2d at 438.  Plaintiff's motion to conduct jurisdictional discovery is denied.

## IV.     CONCLUSION

For the reasons stated above, the motion to dismiss the SAC against Ingargiola is GRANTED.  The Clerk of the Court is respectfully directed to close the motion at docket number 57.

Dated: July 21, 2020
       New York, New York

       _____
                    **LORNA G. SCHOFIELD**
                **UNITED STATES DISTRICT JUDGE**