UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                     :

YESENIA CEPEDA,                                  :

                                        :

                        Plaintiff,               :

                                        :               19 Civ. 5967 (JPC)

           -v-                            :

                                        :            <u>OPINION AND ORDER</u>

UNITED STATES,                          :

                                        :

                     Defendant.          :

                                        :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Yesenia Cepeda brings this action against the United States under the Federal Tort

Claims Act ("FTCA"), alleging medical malpractice in connection with a surgery performed at the

James J. Peters VA Medical Center in Bronx, New York ("Bronx VA") in May 2017.  Before the

Court is Plaintiff's motion for leave to file a Third Amended Complaint, which would add a new

cause of action for lack of informed consent.  Because that proposed amendment would be futile,

the Court denies Plaintiff's motion.

## I.  Background

### A.  Factual Allegations

      The following background is taken from Plaintiff's allegations in the Second Amended

Complaint, filed on January 24, 2020, which is the operative complaint at this point.  Second

Amended Complaint, Dkt. 56 ("SAC").  These factual allegations are assumed only for purposes

of the instant motion.

      Plaintiff, a former Army Reservist, suffered an injury to her spine after a car accident in

2009.  *Id.* ¶¶ 13, 22-23.  With her back pain, neck pain, and headaches worsening, Plaintiff received

treatment through the health care system of the Department of Veterans Affairs ("VA").  *Id.*

¶¶ 28-29.  Doctors at the VA assessed that Plaintiff's pain was exacerbated by her large breast size and, after two years of unsuccessful treatment, her primary care physician at the Bronx VA recommended breast reduction surgery.  *Id.* ¶¶ 30-31.

Plaintiff discussed the procedure with two surgeons affiliated with the Bronx VA, Dr. Michael Ingargiola and Dr. Jay Meisner, who ultimately performed the surgery.  *Id.* ¶¶ 32, 40. Leading to the surgery, Plaintiff discussed with Dr. Meisner and a nurse that she felt unprepared for the operation, and she further expressed concern to Dr. Meisner about post-operation scarring. *Id.* ¶ 35.  Dr. Meisner informed Plaintiff that any scarring would be minimal, entailing circular scars around her nipples and scars from her nipples to the bottom of her breasts, but no scarring in the center of her chest, and he assured her that his team would treat any scars that resulted from the operation.  *Id.* ¶¶ 35, 39.  Dr. Meisner further told Plaintiff to expect a full recovery within six months.  *Id.* ¶ 39.

Plaintiff underwent bilateral breast reduction surgery at the Bronx VA on May 9, 2017.  *Id.* ¶ 40.  Plaintiff alleges numerous complications and adverse symptoms from her operation, some of which continued as of the filing of the Second Amended Complaint.  *Id*. ¶¶ 63-67.  Immediately following the surgery, Plaintiff began to experience excruciating pain, bleeding, and other troubling symptoms.  *Id.* ¶ 42.  Three days after the operation, when Dr. Ingargiola and Dr. Meisner were removing the drains that were inserted during surgery, Dr. Ingargiola pulled out a drain that was still attached to stitches, causing Plaintiff to bleed profusely.  *Id*. ¶ 44.  Plaintiff continued to experience severe pain and other symptoms after the drains were removed, which Dr. Meisner assured her were common.  *Id.* ¶ 46.  On a follow-up visit, however, a nurse told Plaintiff that her pain was caused by the improper removal of the stitches that held one of the drains in place.  *Id.* ¶ 47.

Plaintiff also expressed concern to Dr. Ingargiola and Dr. Meisner that her breast size had

been reduced too much and that one breast appeared at least three inches higher than the other. *Id.* ¶¶ 48-50. Both doctors refused to answer Plaintiff's question as to whether that disparity was due to a different physician operating on each breast. *Id.* ¶ 50. Despite Dr. Meisner's assurance to Plaintiff that her breasts would return to normal symmetry after the swelling subsided, her breasts remained asymmetrical months later. *Id.* When the remaining stitches were removed six weeks after the operation, Plaintiff discovered disfiguring scars across her right breast and center of the cleavage, scars which remained as of the date of the Second Amended Complaint and continued to cause Plaintiff extreme pain. *Id.* ¶¶ 53-54.

### B. Procedural Background

Before initiating the instant action in federal court, Plaintiff submitted to the VA an administrative claim, called a Standard Form 95 ("SF-95"), setting forth her claim for injuries resulting from the May 9, 2017 operation. Declaration of Lucas Issacharoff, Exh. 1, Dkt. 105-1 ("SF-95"). In the SF-95, Plaintiff described the basis of her claim as "severe" and "excessive" scarring and alleged that the surgery removed too much breast tissue and reduced her breast size more than she desired. *Id.* She added that as a result of the surgery, her "breasts are completely grossly disfigured" and her "nipples are not symmetrical." *Id.* Plaintiff further asserted that she was experiencing a "reoccurring painful ache all over [her] breast, chest, face and back since the surgery." *Id.* She contended that these complications have caused her depression, stress, shame, and anxiety, and will require corrective surgery. *Id.* Notably, for purposes of the instant motion, Plaintiff did not describe any pre-surgery interactions with her medical providers that would have indicated that her claim was premised on a theory of lack of informed consent.

The VA confirmed receipt of Plaintiff's administrative claim and advised her that an investigator with the agency would be in contact. SAC ¶¶ 71-72. After not hearing from the investigator for several months, Plaintiff started to proactively reach out, including by e-mailing

photographs of her wounds to the investigator.  *Id.* ¶¶ 73-74; Memorandum of Law in Support of Motion for Leave to File Third Amended Complaint ("Motion to Amend"), Dkt. 102-1, at 5.[1]  On December 26, 2018, Plaintiff received a letter from the VA informing her that her administrative claim was denied.  *Id.* ¶ 77.

Plaintiff then commenced this action by filing a *pro se* complaint on June 25, 2019 against the United States.  Dkt. 1.  On October 9, 2019, pro bono counsel entered an appearance for Plaintiff. Dkts. 14, 16.  With the assistance of counsel, Plaintiff filed her First Amended Complaint on October 31, 2019, which added Dr. Ingargiola and Dr. Meisner as individual defendants.  Dkt. 24. The Court entered a Case Management Plan on November 4, 2019, which, among other things, set a deadline of December 5, 2019 for amending any pleadings absent leave of Court.  Dkt. 32 ¶ 6.[2] Two weeks later, the Government certified, pursuant to 28 U.S.C. § 2679(d), that Dr. Meisner and Dr. Ingargiola were deemed employees of the VA for purposes of the FTCA and were acting within the scope of that employment for purposes of the claims asserted by Plaintiff.  Dkt. 35.  On January 24, 2020, Plaintiff filed the Second Amended Complaint, which removed Dr. Meisner as a defendant.  Dkt. 56.  On July 21, 2020, the Court granted the motion to dismiss as to Dr. Ingargiola. Dkt. 76.  The case was reassigned to the undersigned on September 29, 2020.

In the Second Amended Complaint, Plaintiff pleads a cause of action for medical malpractice against the United States, on the grounds that Dr. Meisner and Dr. Ingargiola failed to

---

[1] Although the Second Amended Complaint alleges that Plaintiff e-mailed photographs and medical records to the investigator, *see* SAC ¶ 76, the Motion to Amend and accompanying exhibits reflect only that she e-mailed photographs of her injuries, *see* Motion to Amend at 5; Affidavit of Elizabeth G.H. Ranks ("Ranks Affidavit"), Exhs. 12-13, Dkts. 102-14, 102-15.

[2] Partly due to circumstances related to the COVID-19 pandemic, discovery has been extended or stayed numerous times, culminating with fact discovery concluding on August 1, 2020 and expert discovery concluding on January 29, 2021.  *See* Dkts. 52, 64, 68, 73, 80, 85, 88, 92, 97. Despite these multiple discovery extensions, the December 5, 2019 deadline for amendment of the pleadings without leave of Court was never modified.

meet the standard of care in connection with her May 9, 2017 breast reduction surgery. SAC ¶¶ 81-92. The Second Amended Complaint alleges that this deviation from the standard of care resulted in, among other things, "(1) disfiguring scarring; (2) asymmetrical breasts; (3) asymmetrical nipple placement; (4) incisions that would not heal and release odor and pus; and (5) ongoing, persistent pain that limits the range of motion in both arms." *Id.* ¶ 88. Plaintiff further identifies numerous ongoing challenges in her life from these injuries, including being unable to perform certain activities without pain and preventing her from becoming a police officer and continuing to serve as an Army Reservist. *Id.* ¶¶ 63-67. The Second Amended Complaint does not plead a cause of action for lack of informed consent, nor did any of her prior two complaints.

### C.  Motion to Amend

On December 12, 2020, Plaintiff moved for leave to file a Third Amended Complaint to add a cause of action for lack of informed consent. Dkt. 102. Accompanying that motion is a proposed Third Amended Complaint. Ranks Affidavit, Exh. 1. The proposed lack of informed consent claim would concern information provided to Plaintiff prior to surgery as to who would be performing the procedure and the risk of post-operation scarring.[3] *Id.* ¶¶ 105-117. More specifically, the proposed Third Amended Complaint alleges that the United States, through Dr. Meisner, Dr. Ingargiola, and possibly others:

> failed to provide sufficient disclosure in connection with Plaintiff Yesenia Cepeda's breast reduction surgery, by failing to, *inter alia*, (1) inform Plaintiff Yesenia Cepeda that one or more surgical residents, not the attending physician Jay Meisner, M.D., would be the primary surgeon(s) during her procedure, (2) inform Plaintiff Yesenia Cepeda that surgical residents would be intimately involved in Plaintiff Yesenia Cepeda's surgery; (4) [sic] inform Plaintiff Yesenia Cepeda that a previously undisclosed resident, a resident who had just started her rotation at the Bronx VA Hospital (Nikki Burish, M.D.), would be the primary surgeon for Plaintiff Yesenia Cepeda's procedure; (4) inform Plaintiff Yesenia Cepeda of the real risk of scarring during a breast reduction surgery in light of the fact that even optimal outcomes usually result in some level of minimal scarring, especially

---

[3] Plaintiff's motion asserts that fact discovery revealed that a third physician whom she never met—Dr. Nikki Burish—participated in her surgery. *See* Motion to Amend at 3-4, 7, 15.

considering Yesenia Cepeda's circumstances and her concerns about the presence
of even minimal scarring, such as the minimal scarring she experienced during a
prior surgery; and (5) address Plaintiff Yesenia Cepeda's concerns about scarring
prior to the procedure. . . .

*Id.* at ¶ 113.  The Government filed its opposition to Plaintiff's motion on January 7, 2021, Dkts.

104 ("Opposition"), 105, and Plaintiff filed her reply brief on January 14, 2021, Dkt. 106 ("Reply").

## II.  Discussion

### A.  Legal Standard

Generally, a court analyzes a party's request to amend pleadings pursuant to Federal Rule

of Civil Procedure 15(a).  *See* Fed. R. Civ. P. 15(a).  Under Rule 15(a)(1), a party may amend its

pleading without leave of court "within (A) 21 days of serving it, or (B) if the pleading is one to

which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days

after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Amending a complaint

after these deadlines requires either the opposing party's written consent or leave of court.  *See* Fed.

R. Civ. P. 15(a)(2).  A district court must "freely give leave [to amend] when justice so requires,"

*id.*, but may deny such a request "for good reason, including futility, bad faith, undue delay, or

undue prejudice to the opposing party," *DeCastro v. City of New York*, No. 16 Civ. 3850 (RA),

2020 WL 4932778, at *6 (S.D.N.Y. Aug. 24, 2020) (quoting *McCarthy v. Dun & Bradstreet Corp.*,

482 F.3d 184, 200 (2d Cir. 2007)).  "An amendment is considered futile if it could not defeat a

motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction."  *Raji v.*

*Societe Generale Americas Sec. LLC*, No. 15 Civ. 1144 (AT), 2016 WL 354033, at *2 (Jan. 21,

2016) (quoting *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 264 (E.D.N.Y.2014)).

Federal Rule of Civil Procedure 16(b)(4), however, demands a heightened showing when

leave to amend a complaint would require modification of a court's scheduling order.  Rule 16(b)

requires the court's scheduling order to "limit the time to join other parties, amend the pleadings,

complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  Such a schedule "may be

modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The Second Circuit has explained that Rule 16(b) was "designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (citations omitted).

Thus, when a plaintiff seeks to amend a complaint after expiration of a deadline to do so, "'the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order' may be modified only for 'good cause.'" *DeCastro*, 2020 WL 4932778, at *6 (quoting *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009)).  The burden of demonstrating good cause falls on the moving party.  *See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014).  "The primary consideration," although "not . . . the only consideration," is "whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  "If the party moving to amend seeks to add claims based on facts it knew or should have known at the time of the amendment deadline, it likely failed to act with sufficient diligence to satisfy Rule 16(b)." *Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019) (citing *Perfect Pearl Co., Inc. v. Majesty Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)).

### B.  Plaintiff's Motion to Amend Is Denied on Futility Grounds

In their briefs before the Court, the parties seem to assume that Rule 16(b)(4)'s heightened "good cause" standard applies to Plaintiff's motion, on the theory that granting that motion would require modification of an expired deadline set in the Case Management Plan.  *See* Motion to Amend at 16 ("Good cause also exists to modify the procedural schedule to allow Ms. Cepeda to amend her complaint."); Opposition at 5 ("Plaintiff's request for leave to amend comes more than 11 months after the deadline set forth in the scheduling order . . . .").  As such, the parties focus much of their papers on whether Plaintiff exercised sufficient diligence in bringing her motion to

amend, with the Government arguing that Plaintiff was long aware of the facts underlying any lack of informed consent claim, *see* Opposition at 5-7, and Plaintiff maintaining that her "actions have demonstrated diligence in pursuing the amendment," Motion to Amend at 16.  The Court is less convinced that Rule 16(b)(4)'s "good cause" standard necessarily applies, however.

By its terms, the Case Management Plan in this case set a deadline for amendments of the pleadings without leave of Court.  *See* Dkt. 32 ¶ 6 ("Amended pleadings may be filed *without leave of Court* until 12/5/19." (emphasis added)).  But Plaintiff is not seeking to amend her complaint *without* leave of Court.  She is seeking to amend *with* leave of Court.  While the Case Management Plan plainly set a deadline for amending pleadings without leave of Court, it is less clear whether that schedule also had the effect of setting a deadline for motions to amend with leave of court.  In the event that the Case Management Plan did not set such a deadline, it may be that no court-ordered schedule would need to be modified to allow Plaintiff to amend her pleading, and therefore Rule 16(b)(4)'s heightened standard would not be triggered.  In that case, her application for leave to amend would be governed by Rule 15(a)(2)'s more forgiving standard.

While the Second Circuit has examined in depth the interplay of Rule 15(a)(2)'s more lenient standard and Rule 16(b)(4)'s more stringent "good cause" standard in the context of motions to amend on at least two occasions, *see Kassner*, 496 F.3d at 242-43; *Parker*, 204 F.3d at 339-41, neither case scrutinized similar language to that contained in the Case Management Plan.  In *Parker*, the Second Circuit joined several other Circuits in holding that Rule 16(b)'s "good cause" standard applies to a motion to amend filed after a judge's deadline for amending pleadings.  *Parker*, 204 F.3d at 340.  That decision referred to a "court-ordered deadline for amending the pleadings," *id.* at 339, as opposed to a deadline to file amended pleadings "without leave of court," Dkt. 32 ¶ 6.  And the district court's docket sheet similarly reflects that the court set a deadline for "amending of pleadings" without limiting that deadline to only amendments without leave of court.

*See Parker v. Sony Pictures Enter.*, No. 97 Civ. 264 (LAK) (S.D.N.Y.), Dkt. 21.

*Kassner* is similar.  There, the Second Circuit concluded that Rule 16(b)'s "good cause" standard applied to the plaintiff's motion to amend the complaint, because the motion was filed after a court-ordered deadline for amendment of the pleadings, even though amendment otherwise would have been timely under Rule 15(a)(1).  *Kassner*, 496 F.3d at 243.  The Second Circuit described the expired deadline as "the date specified in the Rule 16(b) scheduling order as the final date for amendment of the pleadings."  *Id.*  Thus, similar to in *Parker*, the court in *Kassner* dealt with a deadline to amend the pleadings, not a deadline to amend the pleadings without leave of court.  And also like in *Parker*, the district court's docket sheet in *Kassner* suggests that the scheduling order set a deadline for all amendments to the pleadings, rather than just for amendments without leave of court.[4]

It is not necessary for the Court to resolve whether the Case Management Plan triggers Rule 16(b)(4)'s "good cause" standard for amendment of the pleadings, however, because Plaintiff's motion to amend fails under the more lenient standard of Rule 15(a)(2) on futility grounds.  Plaintiff has not administratively exhausted the cause of action that she seeks to add in a Third Amended Complaint.  Because administrative exhaustion is a condition of the United States' waiver of sovereign immunity under the FTCA, the Court would lack subject matter jurisdiction over a cause of action for lack of informed consent.

The United States is immune from suits, and "hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit."  *Davis v. Garcia*, No. 07

---

[4] Although the docket sheet in *Kassner* does not appear to reflect the final scheduling order, it contains the draft order that the district judge circulated to the parties for their review and signature, which provided: "No **amendment** to the pleadings will be permitted after **February 1, 2005**."  *Kassner v. 2nd Avenue Delicatessen, Inc.*, No. 04 Civ. 7274 (GBD) (S.D.N.Y.), Dkt. 2 at 2 (emphasis in original).  The Second Circuit's mention of a February 1, 2005 deadline, *see Kassner*, 469 F.3d at 243, suggests that this draft order contained the language that was ultimately ordered by the court.

Civ. 9897 (CLB), 2008 WL 2229811, at *10 (S.D.N.Y. May 27, 2008); *see United States v. Sherwood*, 312 U.S. 584, 586 (1941).  The FTCA partially waives that sovereign immunity and authorizes the United States to be sued for damages in tort suits under certain circumstances. *See Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012); *Matthias v. United States*, 475 F. Supp. 3d 125, 134 (E.D.N.Y. 2020).  As a condition of this waiver, and therefore as a prerequisite for this Court's exercise of jurisdiction, a plaintiff must first present her claim to the appropriate federal agency.  *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))); *accord Rivera v. Morris Heights Health Ctr.*, No. 05 Civ. 10154 (SHS), 2006 WL 345855, at *3 (S.D.N.Y. Feb. 14, 2006); *Matthias*, 475 F. Supp. 3d at 135.  The mandatory exhaustion language of 28 U.S.C. § 2675(a) is clear.  An action under the FTCA may not be instituted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  Only after the agency denies the claim or fails to respond within six months may a plaintiff file an action under the FTCA in federal court.  *See id.*

The applicable federal regulation, 28 C.F.R. § 14.2, allows for a claimant to present a claim to the agency by submitting an SF-95.  *See Godinez-Torres v. United States*, No. 14 Civ. 1097 (CBA) (PK), 2016 WL 11670284, at *4 (E.D.N.Y. Mar. 31, 2016).  To satisfy the FTCA's exhaustion requirement, a claim "must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998); *see id.* ("A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." (citing *Johnson v.*

*United States*, 788 F.2d 845, 848-49 (2d Cir. 1986))).

An examination of both the information provided by Plaintiff to the VA in the administrative process, as well as New York's informed consent statute, reveals that Plaintiff did not present to the VA a claim for lack of informed consent. *See* 28 U.S.C. § 1346(b)(1) (liability under the FTCA to be assessed "in accordance with the law of the place where the act or omission occurred"). She therefore has failed to comply with the FTCA's mandatory exhaustion requirement as to the cause of action she seeks to add.

Starting with the content of her administrative claim, Plaintiff described her alleged injuries in two sections of the SF-95. First, in the "basis of claim" section, she wrote:

> I had a bilateral breast reduction. I was a 36E bra size. I wanted to go down to a Full C/D cup. Dr, Jay Meisner, and Dr. Michael Ingargiola performed the procedure on May 9, 2017, [at] the Bronx VA location. I have severe scarring all over and feel my scars are excessive. Too much breast tissue was removed. I am a lot smaller then I wanted to be. I am extremely depressed, stressed and ashamed. I have a lot of anxiety, I need to have corrective surgery

SF-95 at 1. Next, in the section that invited her to "state the nature and extent of each injury . . . which forms the basis of the claim," Plaintiff wrote:

> I wanted to be at the very smallest a Full C or D. I am now small C. I have permanently horrible large, excessive scarring on both breast[s]. The scars have remained a bright pink/purple along with all the skin on my breast. I am having reoccurring painful ache all over my breast, chest, face and back since the surgery. Both breast[s] are completely grossly disfigured, the left one is noticeably higher than the other. My nipples are not symmetric at all. Where my drain tubes were placed is still painful, sensitive and distorted, the skin does not lay flat and protrudes outwards. I will need corrective surgeries. I am severely depressed due to the appearance, and the amount of pain I am in from this breast reduction surgery. I am ashamed of the outcome and refuse to show anyone my breast. I have also lost my relationship due to my depression. I am extremely stressed and embarrassed with the outcome and the recovery so far.

*Id.* Through these statements, Plaintiff apprised the VA of allegations relevant to a claim of medical malpractice based on her dissatisfaction with the outcome of the surgery and, in particular, the resulting scarring, breast size, and pain. At no point, however, did she put the agency on notice of

11

pre-surgery communications that suggest that the operation may have occurred in the absence of her informed consent.[5]

The absence of any such allegation during the administrative process becomes fatal to Plaintiff's motion to amend upon review of New York's informed consent statute.  Under New York law,

> Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.

N.Y. Pub. Health L. § 2805-(d)[1].  A plaintiff also must "establish[] that a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed and that the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought."  *Id.* § 2805(d)[3]; *see Godinez-Torres*, 2016 WL 11670284, at *5 (enumerating elements of a claim of lack of informed consent under New York law).

Liability under New York law for lack of informed consent thus turns on the disclosures made by the medical provider in advance of the medical procedure at issue.  Plaintiff's SF-95, however, was focused exclusively on the consequences that followed the surgery, citing her post-operation breast size, scarring, and pain, and her resulting feelings of depression and anxiety.  *See* SF-95 at 1.  To the extent that the SF-95 contained any statements reflecting Plaintiff's pre-surgery state of mind, those statements related only to her desired post-surgery breast size.  *Id.*  But she did not describe any pre-operation communications with medical providers that would suggest a failure to properly disclose alternatives to the surgery or "the reasonably foreseeable risks and benefits

---

[5] Nor did any of Plaintiff's other communications with the VA investigator suggest a lack of informed consent.  Those communications, like her SF-95, focused on her dissatisfaction with the results of her surgery, primarily by providing photographs of her post-operative scarring.  *See* Ranks Affidavit, Exhs. 12, 13.

involved" in the surgery.  N.Y. Pub. Health L. § 2805-d[1]; *Godinez-Torres*, 2016 WL 11670284,

at *5.  Without any such allegation covering pre-operation communications, the VA had no reason

to investigate whether there was an absence of informed consent leading to Plaintiff's surgery.

The Second Circuit's decision in *Mayes v. United States*, 790 Fed. App'x. 338 (2d Cir. 2020)

(summary order) strongly supports this conclusion.  *Mayes* involved a plaintiff who sought to

pursue in federal court a claim of lack of informed consent under the FTCA, yet his administrative

claim alleged medical malpractice without mention of an absence of informed consent.  *Id.* at 339.

The Second Circuit rejected the plaintiff-appellant's argument that the district court should have

granted him leave to amend his complaint and noted that the district court treated the allegations in

his complaint to resemble an informed consent claim.  *Id.*  In affirming the district court's dismissal

of that informed consent claim for failure to exhaust, the Circuit employed an analysis that carries

equal force here:

> [The plaintiff's] initial administrative claim asserted only medical malpractice and
> did not include an informed consent claim.  That did not satisfy the FTCA's
> exhaustion requirement, because "[i]n this Circuit, a Notice of Claim filed pursuant
> to the FTCA must provide enough information to permit the agency to conduct an
> investigation and to estimate the claim's worth."  *Romulus v. United States*, 160
> F.3d 131, 132 (2d Cir. 1998) (per curiam).

*Id.* at 339-40.

Other judges in this Circuit have applied similar analyses to conclude that a medical

malpractice claim presented in an SF-95 does not automatically encompass lack of informed

consent.  In *M.A.R. v. United States*, No. 09 Civ. 1727 (LTS), 2009 WL 3877872 (S.D.N.Y. Nov.

18, 2009), the district court considered an SF-95 which presented a medical malpractice claim in

connection with prenatal care, delivery, and postnatal care.  *Id.* at *1-2.  In determining whether

this claim also encompassed lack of informed consent, the court surveyed appellate opinions outside

this Circuit, which "reveal[ed] a majority rule that holds that a lack of informed consent does not

automatically inhere in an administrative claim alleging negligent medical malpractice."  *Id.* at

*3-4.  Rather, the court determined that "a case-by-case analysis is required to determine whether the administrative claim provided the Government with sufficient notice of a latent lack of informed consent claim."  *Id.* at *4.  While the claim in *M.A.R.* provided numerous allegations as to omissions during prenatal care, delivery, and neonatal care, sufficient to prompt an investigation into the treatment decisions, the claim "provided no notice that [the plaintiff mother] believed [the plaintiff child] was injured by a procedure that was performed or a treatment that was given that [the plaintiff mother] would have refused had she been adequately informed, which is the necessary factual premises for a lack of informed consent claim under New York."  *Id.*  Subject matter jurisdiction therefore was lacking.  *Id.* at *5.

The recent decision from the Eastern District of New York in *Matthias* is instructive as well. There, the district court also addressed whether a plaintiff exhausted her administrative remedies prior to bringing a lack of informed consent cause of action.  The court in *Matthias* rejected the plaintiff's argument that a claim of lack of informed consent should be automatically considered as part of a medical malpractice claim.  475 F. Supp. 3d at 139 (citing *Mayes*, 790 Fed. Appx. at 339-40).  While the administrative claim in *Matthias* alleged a failure to diagnose and treat, "it provide[d] no detail as to any alleged failure on the part of the physicians to obtain informed consent."  *Id.*  The same holds true here.

Another court in the Eastern District in New York reached the same result in *Godinez-Torres*, dismissing a claim of lack of informed consent where the plaintiff's "SF-95 did not expressly include the facts underlying the informed consent claim."  2016 WL 11670284, at *5.  In doing so, and like the court in *M.A.R.*, the court adopted a "fact-specific, case-by-case approach to identifying whether an administrative claim put the Government on notice that the plaintiff alleged an informed consent claim."  *Id.* (citations omitted).  Because the facts in *Godinez-Torres* revealed that the administrative claim only referred to negligence during and after the surgery, the court held

14

that the claim did not put the United States on notice of a claim of lack of informed consent.  *Id.* at

*6.  Using language that applies here, the court explained: "Informed consent, by definition, takes

place in advance of surgery.  Nothing in the administrative claim suggests any wrongful conduct

before the surgery."  *Id.*

In the face of these authorities, Plaintiff relies on *Soriano v. United States*, No. 12 Civ. 4752

(VB), 2013 WL 3316132 (S.D.N.Y. July 1, 2013), to argue that lack of informed consent is a species

of medical negligence and therefore was encompassed by her SF-95.  Motion to Amend at 13, 17-

18.  The administrative claim at issue in *Soriano*, however, was not as narrow in scope as Plaintiff's

SF-95.  The claim in *Soriano* "broadly attribute[d] plaintiffs' injuries to each and every aspect of

the care afforded to or omitted from [the plaintiff mother] and [the deceased infant] before, during,

and after the birth of [the deceased infant]."  *Id.* at *7.  Plaintiff's SF-95, in contrast, focused on

only the outcome of her operation, notably, the resulting scarring, breast size, and pain, and her

emotional state post-surgery.  SF-95 at 1.[6]

To the extent that certain language in *Soriano* could be read to imply that any medical

malpractice claim suffices to put an agency on notice of an informed consent claim, *see Soriano*,

2013 WL 3316132, at *7, this Court respectfully parts ways with that analysis and agrees with the

approach taken by the decisions cited above.  *See Mayes*, 790 Fed. App'x. at 339-40; *M.A.R.*, 2009

WL 3877872, at *4; *Matthias*, 475 F. Supp. 3d at 139; *Godinez-Torres*, 2016 WL 11670284, at

*5-6.  The proper inquiry in the Second Circuit considers whether the administrative claim

---

[6] Plaintiff also unpersuasively attempts to distinguish *Mayes* by maintaining that "[her] story has not changed since [the filing of the SF-95 claim]."  Motion to Amend at 19; *see* Reply 4-5.  Putting aside that this assertion is questionable given that her proposed Third Amended Complaint contains allegations absent from her SF-95, any such distinction would be immaterial. In the aforementioned cases, it was the plaintiff's omission in the administrative process of facts giving notice of a lack of informed consent claim that was dispositive.  Also unpersuasive is Plaintiff's suggestion that her status as a former member of the Army Reserves somehow relaxes the FTCA's exhaustion mandate.  *See* Motion to Dismiss at 19.  The jurisdictional prerequisites of the FTCA are mandatory and cannot be disregarded.

"provide[d] enough information to permit the agency to conduct an investigation and to estimate the claim's worth" and was "specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." *Romulus*, 160 F.3d at 132. This requires a fact-specific examination of the SF-95 to assess whether it put the agency on notice of a particular claim. *Godinez-Torres*, 2016 WL 11670284, at *5; *M.A.R.*, 2009 WL 3877872, at *4. Here, Plaintiff's SF-95 failed to provide the VA with any notice of the lack of informed consent claim that she now wishes to pursue.

For similar reasons, the Court disagrees with Plaintiff's argument that "[a]ny investigation into Ms. Cepeda's administrative claim would have confirmed the existence of Ms. Cepeda's lack of informed consent claim." Motion to Amend at 18. The mere submission of an SF-95 does not require an agency to investigate all conceivable theories of tort liability, regardless of whether they were asserted in the SF-95. The Court also finds unpersuasive Plaintiff's argument that the "description of her unhappiness with the outcome of the surgery at a minimum alludes to a failure in providing informed consent prior to the procedure prior to the procedure." Motion to Amend at 18.[7] A patient's dissatisfaction with the results of a medical procedure does not necessarily mean that doctors failed to provide her with appropriate information leading to that procedure.

In sum, Plaintiff failed to present administratively to the VA any allegation that her medical providers failed to inform her of the potential risks of the operation or as to the participants in the surgery. The Court therefore would lack jurisdiction to adjudicate a cause of action for lack of informed consent. Because Plaintiff's proposed amendment would be futile, leave to amend is

---

[7] The case that Plaintiff cites for this argument, *Murrey v. United States*, 73 F.3d 1448 (7th Cir. 1996), is readily distinguishable. *See* Motion to Amend at 18. There, the plaintiff attached to his SF-95 an additional "biography" section, which explained that he entered the VA hospital in Chicago while "extremely fearful of this surgery" and "physicians assured him and his family that surgery was the only available therapy." *Id.* at 1452. The court held that this supplemental attachment would have put the agency on notice of an informed consent claim. *Id.* at 1453.

denied.[8]

### III.  Conclusion

For reasons discussed above, the Court denies Plaintiff's request for leave to file a Third

Amended Complaint.  The Clerk of Court is respectfully directed to close the motion pending at

Docket Number 102.

SO ORDERED.

Dated: February 9, 2021
       New York, New York                                  JOHN P. CRONAN
                                                        United States District Judge

---

[8] Because the Court concludes that the proposed amendment would be futile, the Court need not consider whether the Government would suffer any prejudice from amendment.  *See, e.g.*, *Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 373 n.2 (E.D.N.Y. 2009).